UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM M. BAYES, JR. ,**

        **Plaintiff,**

v.                                                                   Case No:  6:16-cv-1976-Orl-28DCI

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

William M. Bayes, Jr. (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits.  Doc. 1; R. 1-4, 118-19.  Claimant argued that the Administrative Law Judge (the ALJ) erred by: 1) "failing to adequately consider and weigh all of the limitations and opinions outlined by treating physicians"; and 2) "finding that the claimant was 'not credible' when the record clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations."  Doc. 18 at 15, 35.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

### I.     THE ALJ'S DECISION

In January 2013, Claimant filed an application for disability insurance benefits.  R. 118-19.  Claimant alleged a disability onset date of August 20, 2012.  *Id.*

The ALJ issued her decision on May 14, 2015.  R. 19-27.  In her decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease and headaches.  R. 21.  The ALJ found that Claimant had a residual functional capacity (RFC) to perform less than a

full range of light work as defined by 20 C.F.R. § 404.1567(b).[1] R. 22. Specifically, the ALJ found as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: he can occasionally climb ramps and stairs. The claimant must never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, or crawl. He can occasionally reach overhead with his right upper extremity. The claimant must avoid concentrated exposure to extreme cold, loud noise, vibration, and hazards such as heights and moving machinery.

*Id*. The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy. R. 55. The ALJ also asked the VE if Claimant would be capable of performing jobs in the national economy if Claimant was restricted to sedentary work[2] instead of light work. R. 55-56. The VE testified that Claimant would be capable of performing jobs in the national economy even if Claimant was restricted to sedentary work. *Id*. The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. R. 26-27. Therefore, the ALJ found that Claimant was not disabled between the alleged onset date and the date of the ALJ's decision. R. 27.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

## II. STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.     ANALYSIS

**A. Failure to Properly Weigh Opinions**

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 404.1546(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. § 404.1545(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(c)(2); (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

### 1. Opinions of Nizam Razack, M.D. and Padmaja R. Yatham, M.D.

Claimant argued that the ALJ erred by failing to state the weight she assigned to the opinions of Dr. Razack and Dr. Yatham, Claimant's treating physicians.[3] Doc. 18 at 17-26. But Claimant failed to identify any medical opinions in Dr. Razack's or Dr. Yatham's records that the ALJ purportedly failed to weigh. *Id*. Nor did Claimant explain how any of Dr. Razack's or Dr. Yatham's purported medical opinions directly contradicted the RFC. *Id*. Instead, Claimant summarized the medical records of Dr. Razack and Dr. Yatham, emphasizing the portions of the records that appeared to support Claimant's position. *Id*.

---

[3] To the extent Claimant was arguing that the ALJ failed to consider Dr. Razack's and Dr. Yatham's records, Claimant's argument is without merit. It is apparent from the ALJ's decision that she considered Dr. Razack's and Dr. Yatham's records. R. 23-26, 339-55, 467-75, 477-523, 570-603.

After reviewing Dr. Razack's and Dr. Yatham's records, the undersigned finds that the records do not contain any "medical opinions" and, in particular, no opinions that purport to limit what Claimant can do as a result of his impairments.. R. 339-55, 467-75, 477-523, 570-603; *see Lara v. Comm'r of Soc. Sec.*, 2017 WL 3098126, at *6 (11th Cir. July 21, 2017) (per curiam) ("Because this record lacks any indication of Hurtado's judgment about the 'nature and severity' of Lara's impairments, we cannot say that it qualifies as a medical opinion.").[4] Moreover, even to the extent that Dr. Razack's or Dr. Yatham's records arguably do contain medical opinions that the ALJ was required to weigh, the ALJ considered Dr. Razack's and Dr. Yatham's records, and any purported medical opinions contained therein do not directly contradict the ALJ's RFC determination.[5] R. 23-26, 339-55, 467-75, 477-523, 570-603. Therefore, the ALJ's alleged failure to weigh the purported medical opinions would be harmless error. *See, e.g.*, *Lara*, 2017 WL 3098126, at *6 (finding that any error in failing to assign weight to an opinion was harmless where the ALJ's decision reflected that the ALJ had considered the records and the ALJ's decision was consistent with the records); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

[5] For instance, Claimant argued that Dr. Yatham's records showed that Claimant had numbness in his right upper extremity with decreased sensation. Doc. 18 at 20-21. Claimant argued that "[n]umbness and a decreased sensation in the claimant's right upper extremity would impact his ability to use his right hand, his dominant hand." *Id*. But Claimant failed to cite to any medical opinion to support his tacit assertion that this alleged numbness and decreased sensation directly contradicted the RFC. *Id*. Upon review, the undersigned finds that the alleged numbness and decrease in sensation in Claimant's right upper extremity does not directly contradict the RFC, which limited Claimant to light work, and limited Claimant's ability to reach overhead with his right upper extremity and his ability to climb ladders, ropes, and scaffolds. To the extent that Claimant is asking the undersigned to reweigh the evidence and find that the ALJ should have included more severe limitations, the undersigned declines to do so. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips*, 357 F.3d at 1240 n.8 (quotation omitted).

curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

Further, because Claimant did not specifically argue what purported medical opinions the ALJ failed to weigh or how those opinions undermined the ALJ's decision, the undersigned finds that Claimant abandoned the argument. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh v. U.S. Atty. Gen*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.")).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's assignment of error regarding Dr. Razack's or Dr. Yatham's purported medical opinions.

## 2. Opinion of Frank J. Alvarez, Jr., M.D.

On October 9, 2012, Claimant presented to Dr. Alvarez for an initial neurology consultation. R. 202-206. Dr. Alvarez's initial recommendations included an opinion that Claimant "be at restricted activity with 15 [pound] limit and no excessive lifting until released by

a back surgeon." R. 206. Dr. Alvarez reiterated this opinion during Claimant's return visit on October 23, 2012. R. 198-201. However, on November 19, 2013, after Claimant had seen Dr. Razack, a neurosurgeon, Dr. Alvarez no longer included in his recommendations an opinion that Claimant "be at restricted activity with 15 [pound] limit and no excessive lifting until released by a back surgeon." R. 545-49. Claimant last saw Dr. Alvarez on December 10, 2013, and Dr. Alvarez again did not recommend any restrictions with regard to Claimant's ability to lift weight. R. 539-42.

The ALJ considered Dr. Alvarez's opinion, but gave it only "limited weight." R. 25. The ALJ gave Dr. Alvarez's opinion "limited weight because as a temporary restriction intended for a specific time period, [the opinion was] of limited usefulness to the [ALJ] in determining claimant's residual functional capacity." *Id*.

Claimant argued that the ALJ erred by giving Dr. Alvarez's opinion "limited weight." Doc. 18 at 26-27. Specifically, Claimant argued that it was unclear how the ALJ reached her conclusion that Dr. Alvarez's opinion was a "temporary restriction intended for a specific time period." *Id*. Claimant argued that he has not yet been released by a back surgeon and that Dr. Alvarez did not indicate that the weight restriction would be in effect for only a specified period of time. *Id*. Claimant further argued that if the ALJ was unclear as to whether the weight restriction remained in effect, then the ALJ should have contacted Dr. Alvarez for clarification. *Id* at 26-27.

The Commissioner argued that the ALJ fully considered Dr. Alvarez's opinion and properly gave it limited weight because it was only a temporary restriction intended for a specific time period. *Id*. at 33-35. The Commissioner argued that Claimant ignored the fact that Dr. Alvarez did not include the recommended weight limitations in his subsequent examinations. *Id*. The Commissioner further argued that it was not necessary for the ALJ to contact Dr. Alvarez for

clarification because "the plain language of Dr. Alvarez's opinion indicated that the limitations in the opinion were not permanent," and because the file had sufficient evidence for the ALJ to determine that Claimant was not disabled. *Id*. The Commissioner also argued that Claimant failed to show that not contacting Dr. Alvarez resulted in an unfair proceeding or clear prejudice. *Id*.

Upon review, the undersigned finds that the ALJ's reason for giving the opinion of Dr. Alvarez "limited weight" was supported by substantial evidence. The plain language of Dr. Alvarez's opinion suggests that the restriction was temporary, as the restriction was only meant to be in place "until" Claimant was released by a back surgeon. Moreover, as previously discussed, Dr. Alvarez stopped including the restriction in his list of recommendations. Significantly, Dr. Alvarez did not opine as to any weight limit restrictions during Claimant's final visit. R. 539-42.

Regardless, even if the undersigned were to find that the ALJ erred by giving the opinion of Dr. Alvarez "limited weight," the error would have been harmless. In addition to testifying that Claimant could perform jobs in the national economy consistent with the RFC, the VE also testified that Claimant would be able perform jobs in the national economy if he were restricted to sedentary work instead of light work. R. 55-56. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). As such, Dr. Alvarez's opinion restricting Claimant to lifting no more than 15 pounds would not directly contradict a finding that Claimant was capable of sedentary work. And because the VE testified that Claimant would be capable of performing jobs in the national economy if he were limited to sedentary work, the undersigned finds that even if the ALJ did err, the error would have been harmless because the outcome of this case would not change if the case were to be remanded to the Commissioner. *See Ortiz v. Comm'r of Soc. Sec.*, 6:15-cv-705-Orl-41GJK, 2016 WL 3166849, at *3 (M.D. Fla. Apr. 25, 2016) (finding harmless error where

the outcome of the case would not change if the case were remanded to the Commissioner), *report and recommendation adopted*, 2016 WL 3144118 (M.D. Fla. June 6, 2016); *see also, e.g.*, *Torres v. Astrue*, 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012), *report and recommendation adopted*, 2012 WL 602367 (M.D. Ga. Feb. 23, 2012) ("harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless.") (citations omitted); *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190.

Finally, Claimant's argument that the ALJ should have contacted Dr. Alvarez is without merit. In "the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel." *Yamin v. Comm'r of Soc. Sec.*, No. 6:07-cv-1574-ORL-GJK, 2009 WL 799457, at *12–14 (M.D. Fla. Mar. 24, 2009); *see Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented). In *Rease v. Barnhart,* 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. 1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).
> ...
> When the medical evidence is inadequate for the Commissioner to determine whether the claimant is disabled, the Commissioner has the responsibility to re-contact the claimant's treating physician(s) or other medical source(s) and determine whether the additional information the ALJ needs is available. 20 C.F.R. § 404.1512(e). If

> the additional needed medical evidence is not readily available, then the ALJ should obtain a consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v. Barnhart,* 246 F. Supp. 2d 1201 (M.D. Ala. 2002); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th Cir. 1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir. 1984).

422 F. Supp. 2d at 1372.

Here, Claimant failed to demonstrate that the ALJ did not conduct a full and fair inquiry into the matters at issue. Claimant did not allege that the ALJ failed to make every reasonable effort to develop Claimant's complete medical history. Nor did Claimant allege that the medical evidence was inadequate for the ALJ to determine whether Claimant was disabled. Instead, Claimant alleged, without support, that the ALJ was "unclear" as to whether the weight restriction remained in effect, and thus, that the ALJ should have contacted Dr. Alvarez. But there is nothing to suggest that the ALJ was "unclear" as to whether Dr. Alvarez's opinion remained in effect. The fact that the ALJ did not interpret Dr. Alvarez's opinion in the manner that Claimant desired does not, in and of itself, render the ALJ's decision erroneous. The ALJ reviewed Dr. Alvarez's record and arrived at a reasoned decision based upon that record. Therefore, the ALJ satisfied his duty to conduct a full and fair inquiry.

Moreover, Claimant has not made a showing of prejudice resulting from the ALJ's purported failure to conduct a full and fair inquiry. *See Graham*, 129 F.3d at 1423 ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."). Claimant was represented by counsel at the hearing and had the opportunity, both before and after the hearing, to obtain an additional opinion from Dr. Alvarez. Further, Claimant has not demonstrated, or even alleged, the existence of evidentiary gaps within the record that resulted in unfairness or "clear prejudice." *Id*. ("The court should be guided by whether the record

reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"). Finally, as previously discussed, even if the ALJ did err by giving Dr. Alvarez's opinion "limited weight," the error would have been harmless. Therefore, even assuming that the ALJ was required to contact Dr. Alvarez, Claimant would not have been prejudiced by the ALJ's failure to do so.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's assignment of error regarding Dr. Alvarez's medical opinion.

### B.  The ALJ's Credibility Determination

Claimant argued that the ALJ "erred in finding that the claimant was 'not credible.'" Doc. 18 at 35-37. Specifically, Claimant argued that the ALJ's credibility determination was nothing more than boiler plate language and that the ALJ did not offer any specific reasons for undermining Claimant's testimony. *Id*.

The Commissioner argued that substantial evidence supported the ALJ's credibility determination. Doc. 18 at 37-41. Specifically, the Commissioner argued that the ALJ compared Claimant's allegations to Claimant's medical records and activities. *Id*. The Commissioner argued that Claimant's medical records consistently documented mild objective findings and effective treatment with medication. *Id*. The Commissioner also argued that Claimant's activities of daily living supported the ALJ's credibility determination. *Id*.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. at § 404.1529(c)(1)-(3).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62.  The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  *See Foote*, 67 F.3d at 1562.

On May 6, 2015, Claimant appeared before the ALJ for a hearing.  R. 33-58.  At the hearing, Claimant testified that he suffers from headaches; loss of sleep; nerve damage down his right arm; loss of feeling in his right arm; muscle spasms; knots in his right shoulder; pain with reaching; lack of finger strength in his right hand; numbness and burning in his feet; and knots down his right leg, buttocks, and lower back.  R. 43-44.  Claimant testified that he has had "lots of injections" performed but that the injections "don't work at all."  R. 45.  He also testified that he has been taking some medications, but that they generally do not help very much.  R. 45-46.  Claimant testified that his conditions have gotten worse over time, particularly his migraines and lower back pain.  R. 51-52. With regard to his activities of daily living, Claimant testified that he drives his kids to school every day; that he is not able to do any household chores; that he is able to go to the grocery store for minor things; and that he is able to attend to his personal care such

as bathing and dressing. R. 48, 50-51. Claimant testified that surgery had been recommended but that he had only been guaranteed 30% relief. R. 45.

After discussing Claimant's testimony, the ALJ found that Claimant's impairments could reasonably be expected to cause his alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely credible for the reasons explained in this decision." R. 22-23. Thereafter, the ALJ discussed the medical and opinion evidence, noting the mild objective findings in Claimant's records.[6] R. 23-26. The ALJ also discussed the fact that Claimant repeatedly reported good relief from injections with improved quality of life, and the fact that Claimant reported that he was independent in all activities of daily living, including cooking, housekeeping, and yard work. R. 23-25. The ALJ then stated, in part, as follows:

> These facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause him pain. What these pieces of evidence suggest is that the claimant's symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity. The above residual functional capacity, as determined by the undersigned, gives adequate weight to the facts as determined credible.
>
> . . .
>
> When considered in conjunction with the above treatment records, the claimant's allegations regarding his daily activities are not persuasive. In January 2013, claimant reported that he could shop independently for small purchases, prepare meals, perform light daily tasks such as dishwashing and bed making, do personal laundry, travel independently, manages finances independently, and is able to perform most personal care without assistance. On a pain questionnaire dated March 2013, claimant reported that he prepares a meal hours

---

[6] For instance, the ALJ noted that Claimant's gait was normal and his posture was erect; that Claimant could walk heel to toe; that Claimant's cervical, thoracic, and lumbar range of motion were all mildly reduced with pain; and that Claimant's straight leg raises were negative bilaterally. R. 23-26.

ahead of time so he can do it gradually. He reported that he needs help with getting his shirts on and off. He reported that he cannot use a vacuum. He reported that he has pain when he moves clothing from the washer to the dryer. He reported that he can ride the lawn mower for short periods. He testified that he drives daily to take his children to school. He testified that on an average day, he spends half the day lying down. He testified that he does no household chores because he is not able to do them. He testified that he only goes to the grocery store if he must. He testified that he can complete personal care without assistance. These activities suggest that the claimant is capable of sustaining simple work activities within the parameters set forth in the residual functional capacity.

Furthermore, at numerous pain management appointments, claimant reported good pain relief from the injections he received. However, at the hearing, claimant testified that they did not work for him. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistency suggests that the information provided by the claimant generally may not be entirely reliable. In addition, claimant's refusal to undergo surgery recommended by his doctor suggests his symptoms may not be as severe as he alleges.

R. 25-26 (internal citations to the record omitted).

Contrary to Claimant's position, the ALJ clearly articulated specific reasons for finding that Claimant's testimony was not entirely credible. First, the ALJ noted that the objective medical evidence did not support the level of severity to which Claimant testified. R. 25. Second, the ALJ noted that the activities of daily living testified to by Claimant were not consistent with Claimant's activities of daily living reported elsewhere in the record. *Id*. Finally, the ALJ noted that Claimant repeatedly reported good pain relief from injections despite testifying that the injections did not work. R. 26. The ALJ also noted Claimant's refusal to undergo surgery, which the ALJ found suggested that Claimant's symptoms may not be as severe as alleged. *Id*.

Upon review, the undersigned finds that the reasons provided by the ALJ are supported by substantial evidence. Claimant's records contain substantial evidence to support the fact that

Claimant's condition was not as severe as alleged,[7] that Claimant's reported activities of daily living were inconsistent with Claimant's testimony, and that Claimant repeatedly reported good pain relief from injections. R. 199-206, 232-33, 342-43, 469-73, 477-501, 539-42, 545-49, 570-80, 649-52.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### IV.   CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.   **AFFIRM** the final decision of the Commissioner; and

2.   Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

---

[7] For instance, Claimant was repeatedly found to be in no acute distress with normal strength in the arms and legs; normal upper extremity coordination and fine finger movement; normal toe and heel walking without evident weakness; and normal gait. R. 199-206, 232-33, 342-43, 469-73, 477-501, 539-42, 545-49, 570-80, 649-52.

Recommended in Orlando, Florida on October 27, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy